IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| OTIS L. BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:21-cv-112 (MTT) |
| | ) |
| Major HARRIS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

United States Magistrate Judge Charles H. Weigle recommends granting the defendants' motion for summary judgment (Doc. 38) in this 42 U.S.C. § 1983 action alleging Eighth Amendment violations for deliberate indifference to Plaintiff Otis Barnes's mental health needs at Baldwin State Prison ("BSP") and Georgia State Prison ("GSP").  Doc. 48.  Barnes objected (Docs. 50; 51), so pursuant to 28 U.S.C. § 636(b)(1), the Court reviews de novo the portions of the Recommendation to which Barnes objects, and the remaining portions for clear error.

Barnes argues the defendants' failure to treat his mental health needs and fulfill his requests for medication led to multiple suicide attempts.[1]  Docs. 50; 51.  According to Barnes his "treatment was so cursory it amounted to no treatment at all which is why [he] attempted suicide."  Docs. 50 at 2; 51 at 2.  But there is no evidence Barnes failed to receive any ordered treatment, including prescriptions, by any treatment provider at

---

[1] "None of Defendants Harris, Ramsey, Reno, or Westfield had at any time relevant to this matter the responsibility, ability, or authority to prescribe or treat an inmate with medication."  Doc. 38-2 ¶ 7.

BSP or GSP.  There is also no evidence that any mental health provider—yet alone any named defendant—ignored or failed to treat Barnes's mental health disorders or ignored Barnes when he expressed ideations of self-harm.  The record reflects that each time Barnes expressed the desire to harm himself, treatment providers completed a suicide assessment and developed treatment plans.  Doc. 47 at 8-13, 20-24, 34-37, 49-54.  As part of these assessments, Barnes was placed in an Acute Care Unit ("ACU") at least four times.  *Id.* at 7, 19, 32, 48.  Barnes was further treated by mental health counselors, psychologists, nurse practitioners, and a psychiatrist.  *Id.* at 14-18, 25-31, 38-47, 55-67.

Defendant Ramsey specifically is the only defendant to whom Barnes expressed ideations of self-harm.  Docs. 38-2 ¶ 13; 47 at 2-4.  She treated Barnes only once and completed a suicide risk assessment and developed a treatment plan for him.[2]  Docs. 38-2 ¶ 13; 47 at 2-6.  Defendant Harris likewise treated Barnes only once, as a result of which Barnes was transferred from Hancock State Prison ("HSP"), a prison without mental health providers, to BSP, for the sole purpose of making mental health treatment available to Barnes.  Docs. 38-2 ¶¶ 10, 12; 38-3 ¶¶ 7-8; 42 at 1; 47 at 1.  Defendant Reno never treated Barnes and, as GSP's mental health director, she did not treat any patients.  Docs. 38-2 ¶¶ 5, 7, 14; 38-9 ¶ 6.  Reno actually interacted with Barnes only once.  Docs. 38-2 ¶¶ 5, 7, 14; 38-7 at 5-6; 42-2 ¶ 24.  After which, she referred Barnes to a psychologist, so he could be referred to a "psychiatrist for psychotropic medication."  Docs. 38-2 ¶ 14; 38-7 at 6.  And because Defendant Westfield also never treated

---

[2] After Barnes expressed these thoughts, "Ramsey completed a Suicide Risk Assessment," sent "a Suicide Precaution Notification to the Warden," and created "a Suicide Precautions Treatment Plan." Doc. 38-2 ¶ 13.  As part of this plan, Barnes received "daily individual counseling by the crisis team, consisting of a nurse and psychiatrist / advanced practice registered nurse," was "monitored daily by the CSU/ACU treatment team," and "placed on [regular] 15-minute [suicide] watch."  *Id*.

Barnes, Barnes cannot show that either Reno or Westfield failed to treat him properly. Docs. 38-2 ¶¶ 5-7, 14; 38-10 ¶¶ 2, 7-8.  There is no evidence the defendants otherwise ignored Barnes or manifested deliberate indifference toward him.

Barnes also claims the defendants "decided to take a less efficacious and easier course of treatment by placing [Barnes] in Acute Care Unit (ACU) and having [Barnes] transferred to different facilities without medication for [his] diagnosis."  Docs. 50 at 2; 51 at 2.  But the record reflects the exact opposite.  Again, Harris's actions facilitated Barnes transfer from HSP to GSP for the sole purpose of making mental health treatment available to him.  Doc. 38-2 ¶ 10.  Reno, in her only interaction with Barnes, also referred Barnes to a psychologist so he could be referred to a psychiatrist for prescription medication.  Docs. 38-2 ¶ 14; 38-7 at 5-6; 42-2 ¶ 24.  Westfield never treated Barnes.[3]  Docs. 38-2 ¶ 6; 38-10 ¶¶ 2, 7-8.  And insofar as Ramsey's suicide risk assessment and treatment plan may have led to Barnes's placement in ACU, Barnes, at best, demonstrates a difference in medical opinion between himself and Ramsey as to his course of treatment.  This does not support a claim of cruel and unusual punishment.  *See Stewart v. Lewis*, 789 F. App'x 825, 828 (11th Cir. 2019) (explaining that a difference in medical opinion will not support a deliberate indifference claim).  Ramsey exercised her professional judgment, and Barnes's disagreement with the manner of his medical care does not constitute deliberate indifference to his serious medical needs.

---

[3]  Barnes contends only that "Defendant Westfield was said to be Barnes mental health counselor and Barnes health care provider while at GSP."  Doc. 42-1 at 1.  But Barnes was never on Westfield's case load and records show that Barnes was assigned to other counselors at GSP.  Docs. 38-2 ¶ 6.  There is also no record of Westfield in fact treating Barnes despite him not being on her case load.

In sum, no action by any named defendant, or any other provider, relating to Barnes's mental health treatment demonstrates that they acted negligently, much less with "more than gross negligence" as required to prove a deliberate indifference claim. *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (explaining "a plaintiff must establish that the defendant … acted with *more than gross negligence*" (emphasis added)).  Accordingly, after review, the Court accepts the findings, conclusions, and recommendations of the Magistrate Judge.  The Recommendation (Doc. 48) is **ADOPTED** and made the Order of the Court.  Accordingly, the defendants' motion for summary judgment (Doc. 38) is **GRANTED**.

**SO ORDERED**, this 6th day of September, 2023.

> S/ Marc T. Treadwell
> MARC T. TREADWELL, CHIEF JUDGE
> UNITED STATES DISTRICT COURT